**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SHAWNTELLE E.,[1]
    Plaintiff,

        v.                                      Civil No. 3:22-cv-00365 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits under the Social Security Act ("Act"). At the time of her application date, Plaintiff was forty-seven years old and previously worked as carpentry production assembler. (R. at 52, 169, 190, 198-99.) She alleges she is unable to work due to degenerative spine disease, lumbar spine pain, and panic attacks. (R. at 59, 189.)

On January 28, 2022, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12-14.) Plaintiff now seeks review of the ALJ's decision. This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further

1

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 16) ("Def.'s Mem.") be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 1, 2020. (R. at 169.) She initially alleged disability beginning October 9, 2018, but amended the alleged onset date to February 27, 2020. (R. at 169, 184-85.) The SSA denied Plaintiff's claim on October 2, 2020 and upon reconsideration on April 5, 2021. (R. at 80, 87.) Plaintiff requested a hearing before an ALJ, and a hearing was held on January 19, 2022. (R. at 34-58, 97.) On January 28, 2022, the ALJ issued a written opinion, holding that Plaintiff could not perform her past relevant work but was capable of performing other work that is available in the national economy. (R. at 15-29.) As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 28.) On April 12, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial

---

restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current

3

work activity. *Id.* § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. *Id.* § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-28.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, February 27, 2020. (R. at 17.) At step two, the ALJ determined that Plaintiff's degenerative disc disease and obesity constituted severe impairments pursuant to 20 C.F.R. § 404.1520(c). (R. at 17.) At step three, the ALJ determined that Plaintiff did not have an impairment,

individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

Between steps three and four, the ALJ determined Plaintiff's residual functional capacity. (R. at 20.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform sedentary work with the following limitations:

> [S]he cannot tolerate exposure to dusts, fumes, or pulmonary irritants. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but never balance or climb ladders, ropes, or scaffolds. She cannot tolerate exposure to hazards such as heights and moving mechanical parts. She would be allowed to stand and stretch after [thirty] minutes seated while remaining on task.

(R. at 20.)

Based on her residual functional capacity findings, the ALJ found at step four that Plaintiff could not perform her past relevant work as a production cabinet assembler, at least in the manner in which such work is generally performed.[3] (R. at 26-27.) At step five, the ALJ determined that there were other jobs in significant numbers in the national economy that Plaintiff could perform within the sedentary work category. (R. at 27.) As part of this process, the ALJ considered the testimony of a vocational expert, who testified that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform the requirements of occupations such as fruit and beverage order clerk, document preparer, and printed circuit board inspector. (R. 27-28.) Accordingly, the ALJ determined that Plaintiff was not disabled under the Act. (R. at 28.)

---

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. § 404.1565(a).

## IV. ANALYSIS

Plaintiff contends three issues warrant the directed award of benefits or, in the alternative, remand. (Pl.'s Mem. at 1, 6.) First, Plaintiff argues that the ALJ "committed legal error" when he improperly "favored the normal objective medical evidence over the abnormal objective medical evidence" and failed to "'build an accurate and logical bridge' from the evidence . . . to his conclusion that [Plaintiff]'s pain is anything less than what she has alleged." (Pl.'s Mem. at 13 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).) Second, Plaintiff contends the ALJ's assertion that Plaintiff "responded to treatment and medications" is not supported by substantial evidence. (Pl.'s Mem. at 14-15.) Third, Plaintiff alleges the ALJ applied an incorrect standard of law when he assessed Plaintiff's activities of daily living without considering the extent to which she could perform them. (Pl.'s Mem. at 15-17.)

Defendant responds that the ALJ's decision should be affirmed because the ALJ: (1) correctly assessed Plaintiff's subjective complaints in accordance with *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) and the applicable regulations for evaluating objective evidence; (2) reasonably considered Plaintiff's "course of treatment and her response thereto in evaluating Plaintiff's subjective complaints[;]" and (3) properly evaluated Plaintiff's daily activities and explained the extent to which Plaintiff could perform them. (Def.'s Mem. at 12-22.) For the reasons that follow, this Court finds that the ALJ did not commit legal error when assessing the evidence, including Plaintiff's subjective complaints and activities of daily living, and substantial evidence supports the ALJ's findings.

**A. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Complaints.**

Plaintiff first argues that the ALJ "applied an incorrect standard of law to the evaluation of [Plaintiff]'s pain" by: (1) requiring objective medical evidence to support her subjective complaints; and (2) selectively choosing "normal objective medical evidence over the abnormal objective medical evidence." (Pl.'s Mem. at 11, 13, 14.) Plaintiff also contends that the ALJ improperly found that the evidence showed that she responded positively to treatment and medications. (Pl.'s Mem. at 14-15.) Finally, Plaintiff claims the ALJ failed to explain how her activities of daily living were inconsistent with her subjective complaints. (Pl.'s Mem. at 15.)

*1. Legal Standard for Evaluating Subjective Complaints.*

The regulations require the ALJ to evaluate a claimant's subjective complaints according to a two-step process. *See* 20 C.F.R. § 404.1529(a). Step one requires the ALJ to find that objective medical evidence shows that the claimant has a medical impairment which could reasonably be expected to produce the alleged symptoms. *Id.* § 404.1529(b). Step two requires the ALJ to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which it affects her ability to work. *Id.* § 404.1529(c). In doing so, the ALJ must consider all the evidence presented and any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

When deciding whether the claimant is disabled, the ALJ must evaluate a claimant's statements in relation to the objective medical evidence and other evidence, which requires the ALJ to assess the credibility of the claimant's statements about her symptoms and their effect on her ability to perform work activities. *See e.g.*, *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). A claimant's subjective statements about pain intensity or persistence "cannot be discounted solely based on objective medical findings." *Id.* However, an ALJ should consider

7

inconsistencies in the evidence to determine whether a claimant's subjective claims can reasonably be accepted. 20 C.F.R. § 404.1529(c)(4). Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. Social Security Ruling [hereinafter "SSR"] 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *8 (Mar. 16, 2016).

  2. *The ALJ's Credibility Findings.*

In this case, the ALJ first explained his duty to follow the two-step process as set forth above to evaluate Plaintiff's symptoms and the extent to which they reasonably could be expected to produce her alleged pain. (R. at 21.) The ALJ also determined Plaintiff's residual functional capacity by considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 20.) In doing so, he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. at 20.) Then, the ALJ proceeded to summarize Plaintiff's subjective complaints, the objective medical evidence, the medical opinion evidence, and third-party statements from Plaintiff's family members. (R. at 21-25.) The ALJ finally concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 25.) Moreover, the ALJ explicitly noted that he "considered [Plaintiff]'s subjective complaints with regard to pain, precipitating and aggravating factors, medications and other treatment, and any functional restrictions and [Plaintiff's] daily activities." (R. at 25.)

Specifically, the ALJ pointed to the following: (1) inconsistencies between Plaintiff's physical examinations and objective evidence and Plaintiff's subjective complaints of pain; (2) inconsistencies between Plaintiff's treatment and her subjective complaints of pain; and (3) inconsistencies between Plaintiff's admitted ability to perform tasks of daily living and her subjective complaints. (R. at 25-26.) Upon review of the ALJ's decision and the record, the Court finds that the ALJ properly considered the consistency between the evidence of record and Plaintiff's subjective complaints, including the extent to which Plaintiff could perform her activities of daily living. Moreover, substantial evidence supports the ALJ's findings.

>  3. *The ALJ Properly Considered Plaintiff's Objective Medical Records in Assessing Her Subjective Complaints.*

As part of the ALJ's credibility assessment, the ALJ found that the objective medical evidence and Plaintiff's physical examinations did not support Plaintiff's subjective complaints of pain. (R. at 25.) The ALJ noted that before and during the relevant period, Plaintiff treated for lower back pain and had been referred to pain management for epidural steroid injections. (R. at 21.) She treated in May 2020 and reported experiencing only two days of pain relief following her last injection. (R. at 21, citing R. at 297.) At that appointment, she endorsed having nine out of ten pain, and was found on examination to have negative straight leg raising[4] and stable gait without

---

[4] The straight leg raise test, also called the Lasègue test, is a fundamental maneuver during the physical examination of a patient with lower back pain," which "aims to assess for lumbosacral nerve root irritation." Gaston O. Camino Willhuber & Nicolas S. Piuzzi, *Straight Leg Raise Test*, NAT'L CENTER FOR BIOTECHNOLOGY INFO., U.S. NAT'L LIBR. OF MED. (last updated June 22, 2022), https://www.ncbi.nlm.nih.gov/books/NBK539717. In layman's terms, the straight leg raising test evaluates whether the patient suffers from sciatic pain radiating from the buttocks to the leg. *Id*. The test is generally performed in the supine position with the examiner raising the patient's fully extended leg from the hip. *Id*. It is considered positive when the patient experiences pain along the lower limb in the same distribution of the lower radicular nerve roots (usually L5 or S1) or when pain is elicited by lower limb flexion at an angle lower than 45 degrees. *Id*. The test can also be performed in the seated position with the leg flexed 90 degrees and extended by

9

assistive devices. (R. at 21-22, citing R. at 297-98.) Her provider scheduled her for another epidural steroid injection and advised her to use over-the-counter pain medication to treat her symptoms. (R. at 22, citing R. at 300.)

At a follow-up appointment on July 6, 2020, Plaintiff reported worsening symptoms "exacerbated with standing and movement as epidural steroid injection did not provide any relief." (R. at 22, citing R. at 286.) Although Plaintiff reported difficulty walking, she appeared on physical examination as having a stable gait without the use of assistive devices. (R. at 22, citing R. at 286.) However, Plaintiff was found to have lumbar tenderness, and was recommended for surgery after her providers concluded that "conservative treatment measures" were unsuccessful. (R. at 22, citing R. at 288.) Subsequently, Plaintiff underwent lumbar right-sided microdiscectomy on July 22, 2020, and reported doing well postoperatively during a follow-up appointment on August 13, 2020. (R. at 22, citing R. at 416, 436, 475-76, 498-500.) During her August 13, 2020 appointment, Plaintiff reported that she had been using a cane for ambulation, but otherwise showed "unremarkable" physical examination findings. (R. at 22, 434-436.) She was reportedly "very pleased with her surgery and recovery and she was discharged in a stable condition with no concerning red flag signs or symptoms." (R. at 22, citing R. at 416, 436.)

Plaintiff next presented on October 1, 2020, complaining of ten out of ten lower back radiating pain and use of a cane for ambulation. (R. at 22, 741.) The ALJ noted that Plaintiff's provider indicated that Plaintiff had been "doing daily activities" while "avoiding any heavy lifting." (R. at 22, citing R. at 741.) Plaintiff reported using a cane to ambulate but was found to have a stable gait without assistive devices. (R. at 741.) Additionally, Plaintiff exhibited positive

---

the examiner until pain in elicited. Anthony J. Busti, *Straight Leg Raising Test*, EVIDENCE-BASED MED. CONSULT (Sept. 2016), https://www.ebmconsult.com/articles/straight-leg-raising-test.

straight leg raising and decreased sensation, but otherwise exhibited normal physical examination findings. (R. at 22, citing R. at 741-42.) She continued to be prescribed Gabapentin and told to use over-the-counter medicines for pain relief. (R. at 22, citing R. at 742-43.) On January 14, 2021, Plaintiff reported seven-out-of-ten "continued persistent lower back pain" with no relief. (R. at 22, citing R. at 779.) Imaging showed moderate lumbar spinal stenosis, but x-rays of the lumbar spine "revealed no significant degenerative changes or alignment abnormality." (R. at 22, citing R. at 779-80, 905.) On physical examination, Plaintiff had a "well-preserved spine range of motion, no tenderness, no evidence of neurological deficit, and no evidence of ataxia gait." (R. at 22, citing R. at 780.) On referral to pain management in March 2021, Plaintiff complained of seven to eight out of ten pain and was found to have lumbar tenderness, "positive lumbar facet loading and Faber test, but was otherwise unremarkable including negative straight leg raising and ambulation with a non-antalgic gait without any assistive devices." (R. at 23, citing R. at 1046-48.) She followed up in June 2021 to report only two days of relief following a prior injection, described difficulty finding affordable aqua-therapy, and complained of pain associated with warm temperatures, muscle spasms, and an altered gait. (R. at 23, citing R. at 1027-29) She was again found on physical examination to have lumbar tenderness, positive lumbar facet loading, positive straight leg raising, and an antalgic gait. (R. at 23, citing R. at 1028-29.)

In November 2021, pain management notes showed that Plaintiff received "no benefit from medical branch blocks" and continued to experience "muscle spasms, slower ambulation, and exacerbation of pain from any movement, standing, or walking." (R. at 23, citing R. at 955.) Although she had normal strength on examination and used no assistive devices, she was found to have cervical and lumbar tenderness, positive Faber, Gaenslen and thigh thrust test, and an antalgic gait. (R. at 23, citing R. at 956.) At her December 2021 appointment, she complained of nine out

of ten pain and received an injection, as well as medication refills. (R. at 23, citing R. at 1103, 1107-08.) She was noted to have posterior sacroiliac spine tenderness, but otherwise normal examination findings. (R. at 23, citing R. at 1103-04.)

Plaintiff contends that the ALJ cherry-picked the evidence by erroneously favoring "normal objective medical evidence over the abnormal objective medical evidence" described in Plaintiff's treatment notes without also explaining "why the abnormal findings were [not] equally persuasive." (Pl.'s Mem. at 13; Pl.'s Reply to Def.'s Mot. Summ. J. at 2, ECF No. 19 ("Pl.'s Reply").) For instance, Plaintiff challenges the ALJ's summation of an October 1, 2020 physical examination showing "normal toe-heel walk and stable gait" but also "positive straight leg raising test and decreased sensation of the left lower extremity." (Pl.'s Reply at 1-2, citing R. at 742.) However, a review of the ALJ's decision shows that he explicitly acknowledged this information in his review of the October 1, 2020 medical record. (R. at 22.) The ALJ remarked:

> Physical examination revealed obesity with a BMI of 37.09, **positive straight leg raising, and decreased sensation** but was otherwise unremarkable including normal toe/heel walk and stable gait without assistive devices. Progress notes reported worsening symptoms, but no evidence of complications or infection and she was discharged in a stable condition with no concerning red flags or symptoms.

(R. at 22) (emphasis added). Nonetheless, Plaintiff argues that the ALJ impermissibly cherry-picked the record because he failed to explain why he was "explicitly swayed by the normal findings while excluding any explanation as to why the abnormal findings [were not] equally persuasive in favor of [Plaintiff]." (Pl.'s Reply at 2.) The undersigned disagrees and finds that the ALJ did not "cherry-pick" only normal findings; he considered all the objective evidence, adequately explained how he weighed it, and reasonably concluded that the evidence was inconsistent with Plaintiff's allegations.

Indeed, throughout the ALJ's decision, he fairly noted instances in which physical examinations revealed lumbar and cervical tenderness, positive straight leg raising, decreased sensation, antalgic gait, and positive lumbar facet loading. (R. at 22, citing Exs. 1F-5F, 7F, 9F/74-82, 93-106, 11F.) The ALJ also evaluated radiological imaging that showed narrowing disc herniation without nerve impingement and moderate lumbar spinal stenosis. (R. at 21-22, citing R. at 299.) Far from selectively identifying evidence that purportedly undermined Plaintiff's disabling allegations, the ALJ expressly and fairly recounted the objective findings when analyzing Plaintiff's claim. *See Bilotta v. Saul,* 850 F. App'x 162, 169 (4th Cir. 2021) ("An ALJ cannot 'cherrypick[] facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" (citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017))); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (describing how the ALJ engaged in cherry-picking by "locat[ing] a single treatment note that purportedly undermines [the medical source's] overall assessment of [the plaintiff's] functional limitations"); *Apr. R.D. v. Saul*, No. 2:20-cv-210, 2021 WL 3260072, at *9 (E.D. Va. June 29, 2021) (recommending remand because the ALJ "selectively cherry-picked unrepresentative evidence"), *report and recommendation adopted*, 2021 WL 3215093 (E.D. Va. July 29, 2021).

Here, the ALJ articulated how he considered the entirety of the objective medical evidence after thoroughly summarizing the treatment notes. (R. at 23.) The ALJ concluded that:

> Overall, objective/physical examinations revealed obesity with BMIs over 35, lumbar tenderness, positive straight leg raising, lumbar facet loading and Faber test, and antalgic gait, but also revealed alertness, orientation, a well-developed and nourished appearance, no acute distress, negative straight leg raising, well-preserved spine range of motion, normal musculoskeletal, extremities and neurologic, and stable gait without assistive devices otherwise.

(R. at 23.)

The undersigned finds that the ALJ fairly identified evidence that supported his conclusion and built an accurate and logical bridge from that evidence to his conclusions. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Indeed, it was reasonable to conclude that Plaintiff's allegation of disabling limitations was inconsistent with normal gait and the ability to heel and toe walk, as well as normal range of motion, strength, orientation, alertness, and other neurological and musculoskeletal findings. (R. at 23.) The ALJ also identified instances in which providers noted normal imaging and informed Plaintiff of the absence of "extensive pathology per x-ray or MRI." (R. at 21-22.)

Consequently, the Court finds that the ALJ properly considered the objective medical evidence in discrediting Plaintiff's subjective complaints. Although another reviewer may have reached different conclusions, the ALJ's decision is still supported by substantial evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."). Thus, the ALJ's determination that Plaintiff was capable of a reduced range of sedentary work is well within the "zone of choice" accorded to the factfinder at the administrative hearing level and should not be disturbed by this Court. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (citing *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

### 4. The ALJ Did Not Err When He Considered Plaintiff's Responsiveness to Treatment.

Plaintiff next argues that the ALJ's assertion that Plaintiff "responded to treatment and medications is unsupported by substantial evidence" and that "[Plaintiff]'s unresponsiveness to treatment and medication actually supports her claim." (Pl.'s Mem. at 14.) Plaintiff contends the ALJ "does not cite a single piece of evidence" in support of his conclusion that Plaintiff responded to treatment and medications, and consequently "failed to build the required accurate and logical

14

bridge from his conclusion to any evidence at all." (Pl.'s Mem. at 15, citing *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016).)

Under the regulations, an ALJ may consider the medications and treatments used to alleviate a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). In this case, the ALJ assessed the evidence related to Plaintiff's treatment, including her medication regimen, surgeries, and injections. (R. at 24.) The ALJ acknowledged that Plaintiff's symptoms worsened in the months after undergoing back surgery, as well as her statements that steroid injections, nerve blocks, and ablation provided only temporary relief. (R. at 21-22, 25.) Indeed, he described a June 2021 treatment note in which Plaintiff reported "only two days [sic] relief" after her last epidural injection, but that her medication regimen continued. (R. at 23.) The ALJ discussed Plaintiff's medication, including her complaints that it did not eliminate her pain. (R. at 21-23.) Nonetheless, the ALJ noted that Plaintiff's medication regimen continued with little change, she continued to undergo steroid injections, and her providers recommended that she continue to use over-the-counter pain medication for symptom relief. (R. at 22-23.)

In assessing Plaintiff's alleged degree of limitation, the ALJ concluded that Plaintiff had "significant spinal issues and residual pain," which he then "addressed in the reduced residual functional capacity . . . ." (R. at 25.) Indeed, the ALJ limited Plaintiff to sedentary work with additional postural and environmental limitations to account for her "ongoing spinal issues and residual pain," as well as her allegations that her pain worsened with movement, standing, and walking. (R. at 20, 24.) The ALJ also accounted for the pain associated with prolonged sitting by providing for a break to stand and stretch after being seated for thirty minutes. (R. at 20.) However, the ALJ concluded that the degree of limitation Plaintiff alleged was "not supported in the record" which revealed "responsiveness to treatment and medications despite some worsening conditions

and the ability to stand, walk, and move about satisfactorily without the use of a handheld assistive device." (R. at 25.)

Here, the ALJ acknowledged instances in which the record showed Plaintiff reported minimal or no symptom relief and accounted for her resulting limitations in the residual functional capacity. Although Plaintiff takes issue with the ALJ's characterization of her treatment history as being "responsive," the undersigned finds that the ALJ nonetheless accounted for her complaints in the residual functional capacity and supported his findings with substantial evidence. To the extent Plaintiff contends the evidence "clearly and convincingly shows that [Plaintiff] was not responding to treatment and, thus, the ALJ's conclusion is not supported by substantial evidence[,]" this appears to be an invitation to re-weigh evidence that has already been considered and weighed by the ALJ. (Pl.'s Mem. at 15) (internal citations omitted). Here, the issue before the Court is whether the ALJ committed legal error when evaluating Plaintiff's claim. Thus, "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings." *Brown v. Colvin*, 2016 WL 4425139, at *6 (D.S.C. Aug. 22, 2016), aff'd 675 F. App'x 336 (4th Cir. 2017.) Further, "[i]n reviewing for substantial evidence, [the court does] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [the court's] judgment for that of the [Commissioner]."). *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

Moreover, Plaintiff's treatment and the extent to which it alleviated her symptoms was not the only factor considered by the ALJ when he made his credibility findings. Indeed, the ALJ accounted for the objective evidence, Plaintiff's subjective complaints, the medical opinion evidence, and, as explained below, Plaintiff's activities of daily living when he determined her residual functional capacity. In doing so, the ALJ sufficiently supported his residual functional

16

capacity determination with substantial evidence – specifically, evidence which supported his conclusion that Plaintiff retains the capacity to perform the exertional functions necessary for sedentary work. Accordingly, the undersigned concludes that the ALJ did not commit legal error and substantial evidence supports his findings.

> 5. *The ALJ Properly Considered the Extent to Which Plaintiff Performed Her Activities of Daily Living.*

Finally, Plaintiff contends the ALJ committed legal error when evaluating Plaintiff's subjective complaints because he failed to "consider the type of activities [Plaintiff] can perform without also considering the extent to which she can perform them." (Pl.'s Mem. at 16, citing *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018) and *Brown v. Comm'r*, 873 F.3d 251, 263 (4th Cir. 2017).) Plaintiff alleges that the ALJ's citation to two medical records indicating that Plaintiff "presented by herself" and was "doing daily activities avoiding any heavy lifting" is not indicative of whether Plaintiff is able "to work eight hours per day, five days-per week." (Pl.'s Mem. at 17.) Consequently, Plaintiff avers the "ALJ's reliance upon the Function Reports is not supported by substantial evidence," and that the ALJ's finding on Plaintiff's ability to perform activities of daily living "is not supported by *any* evidence he cites." (Pl.'s Mem. at 16, 17) (emphasis in original.)

In addressing daily activities, the ALJ must consider both the types of activities that a claimant can perform and the extent to which a claimant can perform them. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Further, the ALJ must "*both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Id.* (emphasis and alteration in original) (internal quotation marks omitted). Otherwise, the court is "left to guess" how the ALJ arrived at his conclusion and cannot meaningfully review his determinations. *Mascio v. Colvin*, 780 F.3d at 632, 637 (4th Cir. 2015).

Here, the ALJ satisfied both requirements and built an accurate and logical bridge from the evidence to his conclusion. Indeed, the ALJ found that Plaintiff could drive, grocery shop with an electric cart, do laundry, perform some personal care, read, watch television and movies, and attend medical appointments. (R. at 26.) The ALJ also noted the extent to which Plaintiff could perform these activities. (R. at 26.) For example, the ALJ stated that Plaintiff could grocery shop in stores, but only when using an electric cart. (R. at 26.) The ALJ also acknowledged that Plaintiff lived in a single-story home and used a handrail to ascend the four steps to its entrance. (R. at 26.) The ALJ pointed out that Plaintiff's October 1, 2020 progress note indicated that she reportedly resumed her daily activities but avoided heavy lifting. (R. at 26.) Subsequently, the ALJ concluded that "[a]lthough limited to a degree in her daily living activities as a result of her impairments, the daily activities that [she] does perform are inconsistent with her complaints of prolonged and consistent disabling functional limitations." (R. at 26.) The ALJ added that "the record and objective medical evidence reflects [Plaintiff]'s limitations mildly restrict her daily activities[,]" but that Plaintiff "continue[d] to perform normal activities of daily living per hearing testimony, adult function reports, and the medical evidence of record." (R. at 26.)

After reviewing the ALJ's decision, the undersigned finds that the ALJ did not simply consider the types of activities that Plaintiff could perform, but also the extent to which she could perform them. (*See* R. at 26.) The Court finds no error in the ALJ's characterization of Plaintiff's subjective complaints within the context of Plaintiff's activities of daily living. Indeed, the ALJ appropriately qualified his analysis with limitations on those activities, providing a legally sufficient assessment of Plaintiff's subjective complaints. Moreover, substantial evidence in the record supports the ALJ's findings. In his narrative, the ALJ accounted for Plaintiff's answers in her adult function report, in which she stated she "lies down or reclines most of the day" and had

"leg pain, swelling feet and ambulation difficulty." (R. at 21.) However, the ALJ noted that this was inconsistent with her ability to ascend the stairs to her home, as well as her admitted ability to perform certain household chores. (R. at 21, 26.) Additionally, during her administrative hearing, Plaintiff testified that, on a "good day" she can "maybe vacuum a little or wash a little clothes," drive, and ride on an electric cart while grocery shopping. (R. at 48-49.) However, Plaintiff also told the ALJ that she feels sad about not being able to be more active when playing with her grandchildren. (R. at 50.)

Upon review, the undersigned finds that the ALJ appropriately accounted for these limitations to Plaintiff's activities of daily living in his assessment of Plaintiff's subjective complaints, and substantial evidence supports his findings. Accordingly, the ALJ did not err.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: February 6, 2023