**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SHAWNTELLE E.,[1]
    Plaintiff,

        v.                                Civil No. 3:22-cv-00365 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits under the Social Security Act ("Act"). At the time of her application date, Plaintiff was forty-seven years old and previously worked as carpentry production assembler. (R. at 52, 169, 190, 198-99.) She alleges she is unable to work due to degenerative spine disease, lumbar spine pain, and panic attacks. (R. at 59, 189.)

On January 28, 2022, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12-14.) Plaintiff now seeks review of the ALJ's decision. This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED in part, Defendant's Motion for Summary Judgment (ECF No. 16) ("Def.'s Mem.") be DENIED, and the final decision of the Commissioner be VACATED and REMANDED for further administrative proceedings consistent with the Court's findings below.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 1, 2020. (R. at 169.) She initially alleged disability beginning October 9, 2018, but amended the alleged onset date to February 27, 2020. (R. at 169, 184-85.) The SSA denied Plaintiff's claim on October 2, 2020 and upon reconsideration on April 5, 2021. (R. at 80, 87.) Plaintiff requested a hearing before an ALJ, and a hearing was held on January 19, 2022. (R. at 34-58, 97.) On January 28, 2022, the ALJ issued a written opinion, holding that Plaintiff could not perform her past relevant work but was capable of performing other work that is available in the national economy. (R. at 15-29.) As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 28.) On April 12, 2022, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Subsequently, the parties filed cross motions for summary judgment, and on February 6, 2023, this Court filed a Report & Recommendation ("R&R"), in which the undersigned recommended that the Honorable David J. Novak, United States District Judge, deny Plaintiff's Motion for Summary Judgment (ECF No. 14), grant Defendant's Motion for Summary Judgment (ECF No. 16), and affirm the

---

restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

Commissioner's final decision. On February 17, 2023, Plaintiff filed objections to the R&R. (ECF No. 21.) However, five days later, on February 22, 2023, the Fourth Circuit decided *Shelley C. v. Commissioner of Social Security Administration*, which held, in relevant part, that an ALJ, in evaluating a claimant's application, "erred in discounting [the claimant's] subjective complaints as inconsistent with the record's medical evidence." 61 F.4th 341, 360 (4th Cir. 2023). Recognizing the import of this decision and the timing of Plaintiff's objections to the R&R, Judge Novak remanded this matter to the undersigned to consider "the impact of *Shelley C.* on the instant case." (ECF No. 23 at 1.)

Consequently, on March 14, 2023, the undersigned ordered: (1) Plaintiff to file a supplemental brief on or before March 23, 2023; (2) Defendant to file a supplemental brief on or before April 4, 2023; and (3) Plaintiff to file her supplemental reply, if any, on or before April 7, 2023. (ECF No. 24.)

On March 23, 2023, Plaintiff's counsel filed a supplemental brief affirming that Plaintiff "does not have fibromyalgia or a major depressive disorder." (Pl.'s Suppl. Br. Addressing *Shelley C. v. Commissioner of Social Security Administration*, ECF No. 25 at 2 ("Pl.'s Suppl. Br.").) Nonetheless, Plaintiff maintains that "the proper standard for evaluation of medical conditions that generate objective findings" as articulated in *Shelley C.* "remains applicable" to the present case. (Pl.'s Suppl. Br. at 2.) Plaintiff asks this Court to reverse the Commissioner's final decision and order payment of benefits or remand her claim for further relief. (Pl.'s Suppl. Br. at 3.)

On April 4, 2023, Defendant filed a supplemental brief agreeing with Plaintiff that some of the findings in *Shelley C.* are not applicable because "this case does not involve a major depressive disorder (or fibromyalgia)" and the "portion of *Shelley C.* which holds that the ALJ cannot rely on the absence of objective medical evidence to discredit 'a claimant's subjective

complaints' in the latter scenarios is inapposite." (Def.'s Suppl. Br., ECF No. 26 at 1, citing Pl.'s Suppl. Br. at 2) (emphasis in original).) However, Defendant argues that "Plaintiff attempts to use the principles of *Shelley C.* and the opportunity for supplemental briefing to rehash the same arguments she previously asserted" in her motion for summary judgment and objections to the R&R. (Def.'s Suppl. Br. at 2.) Defendant maintains that the ALJ did not cherry-pick from the record, and substantial evidence supports his findings. (Def.'s Supp. Br. at 2-4.)

After careful consideration of the impact of the *Shelley C.* decision on the instant matter, the Court entered an order on April 27, 2023 that vacated its previous findings in the R&R. (ECF No. 27.) The Court further advised the parties that a new opinion would be issued promptly.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must consider "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether a disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. *Id.* § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the

claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. *Id.* § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-28.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, February 27, 2020. (R. at 17.) At step two, the ALJ determined that Plaintiff's degenerative disc disease and obesity constituted severe impairments pursuant to 20 C.F.R. § 404.1520(c). (R. at 17.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

Between steps three and four, the ALJ determined Plaintiff's residual functional capacity. (R. at 20.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform sedentary work with the following limitations:

> [S]he cannot tolerate exposure to dusts, fumes, or pulmonary irritants. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but never balance or climb ladders, ropes, or scaffolds. She cannot tolerate exposure to hazards such as heights and moving mechanical parts. She would be allowed to stand and stretch after [thirty] minutes seated while remaining on task.

6

(R. at 20.)

Based on her residual functional capacity findings, the ALJ found at step four that Plaintiff could not perform her past relevant work as a production cabinet assembler, at least in the manner in which such work is generally performed.[3] (R. at 26-27.) At step five, the ALJ determined that there were other jobs in significant numbers in the national economy that Plaintiff could perform within the sedentary work category. (R. at 27.) As part of this process, the ALJ considered the testimony of a vocational expert, who testified that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform the requirements of occupations such as fruit and beverage order clerk, document preparer, and printed circuit board inspector. (R. 27-28.) Accordingly, the ALJ determined that Plaintiff was not disabled under the Act. (R. at 28.)

## IV. ANALYSIS

In her motion for summary judgment, Plaintiff contends the ALJ erred in assessing the medical evidence and Plaintiff's subjective complaints, such that this Court should direct an immediate award of benefits or, in the alternative, remand. (Pl.'s Mem. Supp. Summ. J. at 1, 6 (ECF No. 15) ("Pl.'s Mem.").) First, Plaintiff argues that the ALJ "committed legal error" when he improperly "favored the normal objective medical evidence over the abnormal objective medical evidence" (Pl.'s Mem. at 13.) Second, Plaintiff contends the ALJ's assertion that Plaintiff "responded to treatment and medications" is not supported by substantial evidence, and that he failed to "'build an accurate and logical bridge' from the evidence        to his conclusion that [Plaintiff]'s pain is anything less than what she has alleged." (Pl.'s Mem. at 13-15 (citing

---

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. § 404.1565(a).

*Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).) Third, Plaintiff claims that the ALJ's credibility analysis applied an incorrect standard of law when he assessed Plaintiff's activities of daily living. (Pl.'s Mem. at 15-17.)

Defendant responds that the ALJ's decision should be affirmed because the ALJ: (1) correctly assessed Plaintiff's subjective complaints in accordance with *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) and the applicable regulations for evaluating objective evidence; (2) reasonably considered Plaintiff's "course of treatment and her response thereto in evaluating Plaintiff's subjective statements[;]" and (3) properly evaluated Plaintiff's daily activities and explained the extent to which Plaintiff could perform them. (Def.'s Mem. at 12-22.)

For the reasons that follow, this Court finds that the ALJ failed to identify evidence that supported his conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)) (internal quotation marks omitted); *see also Woods*, 888 F.3d at 694 . Accordingly, the undersigned finds that substantial evidence does not support the ALJ's findings, and remand is warranted.

**A. The ALJ Did Not Cherry-Pick the "Normal" Objective Medical Evidence.**

As part of the ALJ's credibility assessment, the ALJ found that the objective medical evidence and Plaintiff's physical examinations did not support Plaintiff's subjective complaints of pain. (R. at 25.) Plaintiff first argues that the ALJ "applied an incorrect standard of law to the evaluation of [Plaintiff]'s pain" by selectively choosing "normal objective medical evidence over the abnormal objective medical evidence." (Pl.'s Mem. at 13-14.) For the reasons that follow, the undersigned finds that cherry-picking did not pervade the ALJ's consideration of the objective medical evidence.

### 1. The ALJ's Consideration of Plaintiff's Medical Record.

The ALJ noted that before and during the relevant period, Plaintiff treated for lower back pain and had been referred to pain management for epidural steroid injections. (R. at 21.) In May 2020, Plaintiff treated and reported experiencing only two days of pain relief following her last injection. (R. at 21, citing R. at 297.) At that appointment, she endorsed having nine out of ten pain, and was found on examination to have negative straight leg raising[4] and stable gait without assistive devices. (R. at 21-22, citing R. at 297-98.) Her provider scheduled her for another epidural steroid injection and advised her to use over-the-counter pain medication to treat her symptoms. (R. at 22, citing R. at 300.)

At a follow-up appointment on July 6, 2020, Plaintiff reported "worsening symptoms exacerbated with standing and movement as epidural steroid injection did not provide any relief." (R. at 22, citing R. at 286.) Although Plaintiff reported difficulty walking, she appeared on physical examination as having a stable gait without the use of assistive devices. (R. at 22, citing R. at 286.) However, Plaintiff was found to have lumbar tenderness, and was recommended for surgery after her providers concluded that "conservative treatment measures" were unsuccessful. (R. at 22,

---

[4] The straight leg raise test, also called the Lasègue test, is a fundamental maneuver during the physical examination of a patient with lower back pain," which "aims to assess for lumbosacral nerve root irritation." Gaston O. Camino Willhuber & Nicolas S. Piuzzi, *Straight Leg Raise Test*, NAT'L CENTER FOR BIOTECHNOLOGY INFO., U.S. NAT'L LIBR. OF MED. (last updated February 5, 2023), https://www.ncbi.nlm.nih.gov/books/NBK539717. In layman's terms, the straight leg raising test evaluates whether the patient suffers from sciatic pain radiating from the buttocks to the leg. *Id*. The test is generally performed in the supine position with the examiner raising the patient's fully extended leg from the hip. *Id*. It is considered positive when the patient experiences pain along the lower limb in the same distribution of the lower radicular nerve roots (usually L5 or S1) or when pain is elicited by lower limb flexion at an angle lower than 45 degrees. *Id*. The test can also be performed in the seated position with the leg flexed 90 degrees and extended by the examiner until pain in elicited. Anthony J. Busti, *Straight Leg Raising Test*, EVIDENCE-BASED MED. CONSULT (Sept. 2016), https://www.ebmconsult.com/articles/straight-leg-raising-test.

citing R. at 288.) Subsequently, Plaintiff underwent lumbar right-sided microdiscectomy on July 22, 2020, and reported doing well postoperatively during a follow-up appointment on August 13, 2020. (R. at 22, citing R. at 416, 436, 475-76, 498-500.)  During her August 13, 2020 appointment, Plaintiff reported that she had been using a cane for ambulation, but otherwise showed "unremarkable" physical examination findings. (R. at 22, 434-436.) She was reportedly "very pleased with her surgery and recovery and she was discharged in a stable condition with no concerning red flag signs or symptoms." (R. at 22, citing R. at 416, 436.)

Plaintiff next presented on October 1, 2020, complaining of ten out of ten lower back radiating pain and use of a cane for ambulation. (R. at 22, 741.) The ALJ noted that Plaintiff's provider indicated that Plaintiff had been "doing daily activities" while "avoiding any heavy lifting." (R. at 22, citing R. at 741.) Plaintiff reported using a cane to ambulate but was found to have a stable gait without assistive devices. (R. at 741.) Additionally, Plaintiff exhibited positive straight leg raising and decreased sensation, but otherwise exhibited normal physical examination findings. (R. at 22, citing R. at 741-42.) She continued to be prescribed Gabapentin and told to use over-the-counter medicines for pain relief. (R. at 22, citing R. at 742-43.) On January 14, 2021, Plaintiff reported between seven and eight out of ten "continued persistent lower back pain" with no relief. (R. at 22, citing R. at 779.) Imaging showed moderate lumbar spinal stenosis, but x-rays of the lumbar spine "revealed no significant degenerative changes or alignment abnormality." (R. at 22, citing R. at 779-80, 905.) On physical examination, Plaintiff had a "well-preserved spine range of motion, no tenderness, no evidence of neurological deficit, and no evidence of ataxia gait." (R. at 22, citing R. at 780.) On referral to pain management in March 2021, Plaintiff complained of seven to eight out of ten pain and was found to have lumbar tenderness, "positive lumbar facet loading and Faber test, but was otherwise unremarkable including negative straight

leg raising and ambulation with a non-antalgic gait without any assistive devices." (R. at 23, citing R. at 1046-48.) Plaintiff followed up in June 2021 to report only two days of relief following a prior injection, described difficulty finding affordable aqua-therapy, and complained of pain associated with warm temperatures, muscle spasms, and an altered gait. (R. at 23, citing R. at 1027-29.) She was again found on physical examination to have lumbar tenderness, positive lumbar facet loading, positive straight leg raising, and an antalgic gait. (R. at 23, citing R. at 1028-29.)

In November 2021, pain management notes showed that Plaintiff received "no benefit from medical branch blocks" and continued to experience "muscle spasms, slower ambulation, and exacerbation of pain from any movement, standing, or walking." (R. at 23, citing R. at 955.) Although she had normal strength on examination and used no assistive devices, she was found to have cervical and lumbar tenderness, positive Faber, Gaenslen and thigh thrust test, and an antalgic gait. (R. at 23, citing R. at 956.) At her December 2021 appointment, Plaintiff complained of nine out of ten pain and received an injection, as well as medication refills. (R. at 23, citing R. at 1103, 1107-08.) She was noted to have posterior sacroiliac spine tenderness, but otherwise normal examination findings. (R. at 23, citing R. at 1103-04.)

### 2. *The ALJ Did Not Cherry-Pick the Objective Medical Evidence.*

Plaintiff contends that the ALJ cherry-picked the evidence by erroneously favoring "normal objective medical evidence over the abnormal objective medical evidence" described in Plaintiff's treatment notes without also explaining "why the abnormal findings were [not] equally persuasive." (Pl.'s Mem. at 13; Pl.'s Reply to Def.'s Mot. Summ. J. at 2, ECF No. 19 ("Pl.'s Reply").) For instance, Plaintiff challenges the ALJ's summation of an October 1, 2020 physical examination showing "normal toe-heel walk and stable gait" but also "positive straight leg raising test and decreased sensation of the left lower extremity." (Pl.'s Reply at 1-2, citing R. at 742.)

However, a review of the ALJ's decision shows that he explicitly acknowledged this information in his review of the October 1, 2020 medical record. (R. at 22.) The ALJ remarked:

> Physical examination revealed obesity with a BMI of 37.09, **positive straight leg raising, and decreased sensation** but was otherwise unremarkable including normal toe/heel walk and stable gait without assistive devices. Progress notes reported worsening symptoms, but no evidence of complications or infection and she was discharged in a stable condition with no concerning red flag signs or symptoms.

(R. at 22) (emphasis added). Nonetheless, Plaintiff argues that the ALJ impermissibly cherry-picked the record because he failed to explain why he was "explicitly swayed by the normal findings while excluding any explanation as to why the abnormal findings [were not] equally persuasive in favor of [Plaintiff]." (Pl.'s Reply at 2.)

The undersigned disagrees and finds that the ALJ did not "cherry-pick" only normal findings. Indeed, throughout the ALJ's decision, he noted instances in which physical examinations revealed lumbar and cervical tenderness, positive straight leg raising, decreased sensation, antalgic gait, and positive lumbar facet loading. (R. at 22-23, citing Exs. 1F-5F, 7F, 9F/74-82, 93-106, 11F.) The ALJ also evaluated radiological imaging that showed narrowing disc herniation without nerve impingement and moderate lumbar spinal stenosis. (R. at 21-22, citing R. at 299.) Far from selectively identifying evidence that purportedly undermined Plaintiff's disabling allegations, the ALJ expressly and fairly recounted the objective findings when analyzing Plaintiff's claim. *See Bilotta v. Saul,* 850 F. App'x 162, 169 (4th Cir. 2021) (noting that an "ALJ cannot 'cherrypick[] facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" (citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017))); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (describing how the ALJ engaged in cherry-picking by "locat[ing] a single treatment note that purportedly undermines [the medical

source's] overall assessment of [the plaintiff's] functional limitations"); *April R.D. v. Saul*, No. 2:20-cv-210, 2021 WL 3260072, at *9 (E.D. Va. June 29, 2021) (recommending remand because the ALJ "selectively cherry-picked unrepresentative evidence"), *report and recommendation adopted*, 2021 WL 3215093 (E.D. Va. July 29, 2021).

Here, the ALJ articulated how he considered the entirety of the objective medical evidence after summarizing the treatment notes. (R. at 23.) The ALJ concluded that:

> Overall, objective/physical examinations revealed obesity with BMIs over 35, lumbar tenderness, positive straight leg raising, lumbar facet loading and Faber test, and antalgic gait, but also revealed alertness, orientation, a well-developed and nourished appearance, no acute distress, negative straight leg raising, well-preserved spine range of motion, normal musculoskeletal, extremities and neurologic, and stable gait without assistive devices otherwise.

(R. at 23.) Therefore, the undersigned finds that the ALJ did not err by impermissibly cherry-picking among the objective medical evidence.

### B. Substantial Evidence Does Not Support the ALJ's Evaluation of Plaintiff's Subjective Complaints.

#### 1. *Legal Standard for Evaluating Subjective Complaints.*

The regulations require the ALJ to evaluate a claimant's subjective complaints according to a two-step process. *See* 20 C.F.R. § 404.1529(a). Step one requires the ALJ to find that objective medical evidence shows that the claimant has a medical impairment which could reasonably be expected to produce the alleged symptoms. *Id.* § 404.1529(b). Step two requires the ALJ to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they affect her ability to work. *Id.* § 404.1529(c). In doing so, the ALJ must consider all the evidence presented and any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

When deciding whether the claimant is disabled, the ALJ must evaluate a claimant's statements in relation to the objective medical evidence and other evidence, which requires the ALJ to assess the credibility of the claimant's statements about her symptoms and their effect on her ability to perform work activities. *See Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). A claimant's subjective statements about pain intensity or persistence "cannot be discounted solely based on objective medical findings." *Id.* However, an ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims can reasonably be accepted. 20 C.F.R. § 404.1529(c)(4). Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016).

2. *Discussion of the Fourth Circuit's Findings in Shelley C. Related to the Evaluation of Subjective Complaints.*

*Shelley C.* is a case involving a claimant who suffered from "severe mental health impairments, which … constantly ebbed and flowed." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 347 (4th Cir. 2023).[5] For several years, the claimant underwent extensive mental health treatment, which included psychotherapy, psychiatric care and hospitalization, various medications, and thirty-six rounds of Transcranial Magnetic Stimulation therapy. *Id.* at 347-50. At times, the claimant's symptoms of depression seemed to improve, as she presented in a better mood during some therapy sessions, reported that her medications were helpful, and attempted to engage in various activities with family and friends. *Id.* at 348. However, the Fourth Circuit noted that "most, if not all, of these periods of improvement were short lived; [the claimant] usually

_____

[5] Although the Fourth Circuit found multiple instances of error in the ALJ's adjudication of the claimant's disability claim, the undersigned limits the discussion of *Shelley C.* to the Court's holding as it pertains to the evaluation of a claimant's subjective complaints as inconsistent with the medical evidence in the record, which is applicable in this case.

spiraled into deepened periods of heightened anxiety and depression mere days after she vocalized her improvement." *Id.* Indeed, the claimant's struggles with her mental health culminated in her psychiatric admission to the hospital after a medication overdose, which the claimant later admitted to being intentional, as "'a part of her was hoping that she would not wake up.'" *Id.* at 349 (citation to administrative record omitted).

Following this incident, the claimant filed an application for social security disability benefits, in which she submitted answers to multiple Function Reports describing the extent to which her depression, anxiety, and attention deficit disorder symptoms interfered with her daily life. *See id.* at 350-51. For instance, the claimant stated that she lacked desire to do any former hobbies or interests, cried all day, constantly thought about suicide, could not complete any chores, and only went outside to pick up her daughter from school. *Id.* She also claimed that she did not interact with family or friends, stayed in bed all day, did not bathe, or dress most days, and had "no quality to [her] life." *Id.* at 350 (internal citations omitted). In a second Function Report, the claimant alleged she was debilitated by depression, could not focus, gained weight, slept all day, and could not remember or follow simple instructions." *Id.* at 351.

The claimant also testified at an administrative hearing that she "could not do anything or go anywhere[,]" and lived in "a vegetative state." *Id.* She claimed that her Transcranial Magnetic Stimulation treatment "did not aid her beyond a short-lived period and that she constantly had an impending feeling of doom." *Id.* "Her time outside of the house was extremely limited, only leaving once every three weeks for doctor's appointments" and she reported that "she would not be a dependable worker as she could not get up every day to attend work, where she would be required to focus and concentrate." *Id.*

3.  *The Fourth Circuit's Reversal of the ALJ's Decision in Shelley C. Based on the Evaluation of the Claimant's Subjective Complaints.*

The Fourth Circuit determined that the "ALJ erred in discounting [the claimant's] subjective complaints as inconsistent with the record's medical evidence." *Id.* at 360. Specifically, the ALJ committed legal error when he "dismiss[ed] [the claimant's] subjective complaints *entirely* upon the belief that they were not corroborated by the record's medical evidence." *Id.* According to the Court, the claimant "was entitled to rely entirely on subjective evidence to demonstrate that her pain was sufficiently persistent and severe to support a disability finding." *Id.* The claimant's statements "were also directly corroborated by her testimony at the ALJ hearing" that she felt, *inter alia*, constantly hopeless, suicidal, depressed, fatigued, and incapable of being a reliable or dependable employee. *Id.* at 361. In dismissing such complaints on the basis that they were not validated by objective medical support, the ALJ "improperly increased [the claimant's] burden of proof" in contravention of the Fourth Circuit's holding in *Arakas*. *Id.* at 362; *see Arakas v. Commissioner of Social Security Administration*, 983 F.3d 83, 97 (4th Cir. 2020) ("ALJs may not rely on objective medical evidence (or the lack thereof)–even as just one of multiple factors– to discount a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence*.") (emphasis added). Accordingly, the Court explicitly held that depression, like fibromyalgia, was a disease that does not produce objective medical evidence and which has symptoms that vary from person to person. *Shelley C.*, 61 F.4th at 361-62.

Moreover, the Court found that: (1) substantial record evidence did not support the ALJ's conclusion that the claimant's "subjective statements concerning the intensity, persistence, and limiting effects of her symptoms . . . were inconsistent with the medical evidence in the record, which, in his view, 'reflect[ed] a routine and conservative treatment history, and generally benign

mental status examinations[;]'" and (2) the ALJ impermissibly "cherry-picked from the record, highlighting [the claimant's] good moments and bypassing the bad[,]" which "violated an ALJ's 'obligation to consider all relevant medical evidence[.]'" *Id.* at 362 (citation to administrative record omitted).

First, the Court highlighted that the ALJ "inappropriately brushed off [the claimant's] intentional overdose" by noting only her initial denial of attempted suicide and relatively brief hospitalization without also mentioning how she later admitted to purposely ingesting pills following an arguing with her husband and "hoping that she would not wake up." *Id.* The Court found that this evidence, in addition to the claimant's daily thoughts of suicide, did "not reveal a 'benign mental status,' yet the ALJ failed to mention or consider this critical information." *Id.*

Second, "[t]he ALJ's cherry-picking also pervaded his consideration of" the medical treatment notes when he "mentioned only that [the claimant] denied suicidal ideations, was able to enjoy things at times, performed all household duties, and had been regularly attending and enjoying water aerobics." *Id.* Yet, the Court found that "other evidence indicated that [the claimant] performed her household duties because her family depended on her, and her motivation to complete them often wavered and eventually plateaued." *Id.* Moreover, the Court explained that the claimant's participation in activities with family and friends "were few and far between, as they were discussed *in only a handful of [the claimant's] many treatment notes.*" *Id.* (emphasis in original). Similarly, the ALJ recounted how the claimant claimed to enjoy spending time with family, but overlooked her statements about feeling depressed, melancholy, lethargic, and self-conscious of body image while spending time with relatives and attending a family wedding. *Id.* at 362-63.

Third, the Court found that the ALJ "mischaracterized [the claimant's] experience with the [Transcranial Magnetic Stimulation] treatment[,]" by discussing its positive effect on her moods but failing "to note how brief the improvements were." *Id.* at 363. For instance, "within a month of completing the treatments, [the claimant] reported . . . that her mood was depressed, she experienced self-deprecating thoughts, lack of motivation, and lethargy, with intermittent periods of anxiety and worry." *Id.* The Court determined that "[t]hese statements were vital to providing a comprehensive image of the waxing and waning of [the claimant's] chronic depression, which was treatment resistant." *Id.* Indeed, "[w]hen medication management did not appear to abate her symptoms with any longevity," the claimant's providers recommended that she enroll in "a rigorous treatment program" that the Court noted was "only offered and administered to those with the most severe cases of depression." *Id.* at 355, 363-64. However, by "[o]verlooking the extensive and nuanced treatment [the claimant] received, the ALJ inappropriately 'play[ed] doctor in contravention of the requirements of applicable regulations,' by concluding that her treatment was 'routine and conservative.'" *Id.* at 364 (citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (cleaned up)).

    4.   *Remand Is Necessary to Address the ALJ's Evaluation of Plaintiff's Subjective Allegations as Inconsistent with the Medical Evidence Pursuant to the Fourth Circuit's Holding in* Shelley C.

In this case, the ALJ first explained his duty to follow the two-step process as set forth above to evaluate Plaintiff's symptoms and the extent to which they reasonably could be expected to produce her alleged pain. (R. at 21.) The ALJ also determined Plaintiff's residual functional capacity by considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 20.) In doing so, he "considered the

medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. at 20.) Then, the ALJ proceeded to summarize Plaintiff's subjective complaints, the objective medical evidence, the medical opinion evidence, and third-party statements from Plaintiff's family members. (R. at 21-25.) The ALJ finally concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 25.) Moreover, the ALJ noted that he "considered [Plaintiff's] subjective complaints with regard to pain, precipitating and aggravating factors, medications and other treatment, and any functional restrictions and [Plaintiff's] daily activities." (R. at 25.) Specifically, the ALJ pointed to the following: (1) inconsistencies between Plaintiff's physical examinations and objective evidence and Plaintiff's subjective complaints of pain; (2) inconsistencies between Plaintiff's treatment and her subjective complaints of pain; and (3) inconsistencies between Plaintiff's admitted ability to perform tasks of daily living and her subjective complaints. (R. at 25-26.)

Upon review of the ALJ's decision, the record, and relevant Fourth Circuit case law, the Court finds that the ALJ improperly considered the consistency between the evidence of record and Plaintiff's subjective complaints, including the extent to which Plaintiff could perform her activities of daily living. Accordingly, the undersigned recommends that the present matter be remanded to the ALJ for further explanation of how Plaintiff's subjective complaints of pain are consistent or inconsistent with the medical evidence of record, including how such evidence "reveals responsiveness to treatment and medications. " (R. at 25.)

As discussed above, the ALJ summarized Plaintiff's medical treatment history, which included several visits to pain management for epidural steroid injections. (R. at 20-24.) Indeed, the ALJ specifically noted the following evidence related to Plaintiff's reports of pain and associated treatment:

 i. In May 2020, Plaintiff attended an appointment reporting "muscle spasms and pain at 9-10 in intensity" and experiencing "only two days of relief after injection." (R. at 21.)

 ii. In July 2020, Plaintiff reported "worsening symptoms exacerbated with standing and movement as epidural steroid injection did not provide any relief." (R. at 22.) "Despite physical therapy and epidural steroid injections, it was determined [Plaintiff] exhausted conservative treatment measures and surgical intervention was recommended." (R. at 22.)

 iii. Though markedly improved during a visit in August 2020, Plaintiff's pain returned "at 10/10 in intensity" in October 2020. (R. at 22.)

 iv. In January 2021, Plaintiff reported pain rated 7-8/10 in intensity "for which past modalities provided no relief." (R. at 22.) She was "referred to pain management to include the option for a spinal cord stimulator." (R. at 22.)

 v. In May 2021, Plaintiff reported 7-8/10 pain intensity, was referred to aquatic physical therapy, and continued on her prescribed medications. (R. at 23.)

 vi. In June 2021, Plaintiff complained of pain and muscle spasms "for which a prior epidural steroid injection provided only two days relief." (R. at 23.)

 vii. In November 2021, Plaintiff reported "no benefit from medial branch blocks as well as muscle spasms, slower ambulation, and exacerbation of pain from any movement, standing, or walking." (R. at 23.)

Moreover, the ALJ acknowledged Plaintiff's subjective complaints of pain in regard to her pain management treatment. For instance, the ALJ wrote:

> [Plaintiff] testified that she could not maintain fulltime employment because of worsening back pain with activities for which she was provided pain management, received steroid injections and nerve blocks, and took medications. She states medications do not help with her pain. She also had back surgery, which she states provided no help or relief. Medical records reported 90 percent relief after a second injection, but she stated such lasted only for an hour or two.

> Her pain is consistently at 8/10 in intensity. She lies down or reclines
> most of the day since her back surgery. She has good and bad days.

(R. at 21.) Then, the ALJ proceeded to state that "[t]he objective medical evidence reflects [Plaintiff's] complaints of lower back pain exacerbated by movement." (R. at 21.) Further, the ALJ cited to medical opinion evidence from Plaintiff's treating physician that he found "partially persuasive to the extent her acknowledgment of worsening conditions and limitation of mobility support reduction in [Plaintiff's] functioning." (R. at 24.)

Notably, the ALJ specifically accounted for Plaintiff's pain management regimen in his summarization of the medical treatment notes and, as stated above, did not selectively cherry-pick those findings which supported his conclusion. (R. at 21-23.) However, in light of *Shelley C.*, the Court is unable to reconcile the ALJ's subsequent dismissal of Plaintiff's subjective complaints of pain, specifically her repeated reports of high-intensity pain with minimal to no relief from injections, surgery, or nerve blocks, when he determined that "the medical evidence of record reveals responsiveness to treatment and medications despite some worsening conditions." (R. at 25.) According to the ALJ, Plaintiff's "subjective symptoms do not correlate with the objective findings in the medical evidence of record." (R. at 26.) Yet, the ALJ's own recounting of the medical evidence belies his decision to discount Plaintiff's subjective complaints of pain, which are consistent with her reports to her medical providers.

Moreover, the ALJ's reliance on Plaintiff's activities of daily living to discredit her subjective statements does not provide substantial evidence supporting the ALJ's findings on this issue. For instance, the ALJ explained that Plaintiff performed "some independent personal care, read[], watch[ed] TV, watch[ed] movies with her grandchildren, shopp[ed] in stores for groceries, and attend[ed] doctors' appointments," as well as vacuumed, did laundry, drove a car, and used a handrail to enter her home. (R. at 26.) However, it is unclear how such activities are inconsistent

with Plaintiff's subjective statements of pain, particularly when here, as in *Shelley C.*, the record indicates that Plaintiff's pain management treatment "did not aid her beyond a short-lived period." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 351 (4th Cir. 2023). Moreover, like *Shelley C.*, such "activities were few and far between, as they were discussed *in only a handful of [Plaintiff's] many treatment notes.*" *Id.* at 362 (emphasis in original).

Further, both Defendant and the ALJ contend that Plaintiff's activities of daily living are inconsistent with her subjective complaints because Plaintiff: (1) presented to a medical appointment by herself; and (2) reported during one appointment that she had resumed doing daily activities except for heavy lifting. (R. at 26; Def.'s Mem. at 20 (citing R. at 288, 741).) For her part, Plaintiff alleges that the ALJ's citation to these two medical records indicating that Plaintiff "presented by herself" and was "doing daily activities avoiding any heavy lifting" is not indicative of whether Plaintiff is able "to work eight-hours per day, five-days-per-week." (Pl.'s Mem. at 17.) Consequently, Plaintiff avers the "ALJ's reliance upon the Function Reports is not supported by substantial evidence," and that the ALJ's finding on Plaintiff's ability to perform activities of daily living "is not supported by *any* evidence he cites." (Pl.'s Mem. at 16, 17) (emphasis in original.) The undersigned agrees with Plaintiff.

As to the first point, though the ALJ discredited Plaintiff's allegations of disabling limitations based on her purported ability to present to her medical appointments on her own, he failed to explain how that is akin to having the ability to engage in full-time work on a sustained basis. *See Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020); *see also Rogers v. Comm'r of Soc. Sec. Admin.*, 486 F.3d 234, 248 (6th Cir. 2007) (finding that the ability to drive, clean an apartment, care for two dogs, do laundry, read, stretch, and watch the news are "not comparable to typical work activities.") Second, the ALJ disproportionately placed considerable

weight on a single treatment note in which Plaintiff reported "doing daily activities and avoid[ing] any heavy lifting." (R. at 741.) It is not clear to this Court from this treatment note exactly what daily activities Plaintiff had been doing, or the extent to which she could perform them. Moreover, the very same treatment note also recorded the return of her pain symptoms just one month after undergoing surgery. (R. at 741.) Indeed, it indicated that Plaintiff reported "worsening symptoms on the left lower extremity since surgery" which she rated at the time of her appointment as 10/10 in intensity at rest and with activity. (R. at 741-42.) Additionally, the note contained details supporting Plaintiff's claim that she struggled to find relief in her treatment and medications, as her provider noted that Plaintiff "tried her home exercises for core strengthening, anti-inflammatories, gabapentin and activity modification with minimal relief." (R. at 742.) Thus, like the ALJ in *Shelley C.*, the ALJ here simply concluded that Plaintiff's allegations were inconsistent with her reported progress following surgery but failed "to note how brief the improvements were." *Shelley C.*, 61 F.4th at 363.

Although the ALJ did consider other evidence, including Plaintiff's daily activities, the Court's review of the ALJ's decision reveals that the ALJ ran afoul of Fourth Circuit precedent by "placing undue emphasis on [Plaintiff's] normal clinical and laboratory results[,]" and "effectively required" objective evidence of Plaintiff's symptoms. *Arakas*, 983 F.3d at 97. Additionally, the *Shelley C.* decision similarly indicates that the ALJ here did not sufficiently explain his reasons for why he discredited Plaintiff's subjective complaints of pain based on her purported responsiveness to medication and treatment. Though *Shelley C.* specifically held that depression is a disease that does not produce objective medical evidence, and therefore subjective statements regarding its symptoms cannot be discounted based on objective medical evidence (or lack thereof), the Court reinforced its prior holding in *Arakas* that, as to diseases that *do* produce such

objective evidence, ALJs are nonetheless prohibited from disregarding a claimant's subjective complaints "*solely*" because they are not substantiated by objective medical evidence. *Shelley C.*, 61 F.4th at 360(citing *Arakas*, 983 F.3d at 95).

Thus, the undersigned finds that the ALJ failed to discuss sufficient evidence supporting his contention that Plaintiff's subjective complaints are inconsistent with the medical evidence showing responsiveness to treatment. Such failure precludes meaningful substantial evidence review, particularly given the ALJ's recounting of evidence supporting Plaintiff's allegation that "she was not responding to treatment" (Pl.'s Mem. at 15 (arguing that the ALJ failed to "cite a single piece of evidence in support of" his conclusion that Plaintiff responded to treatment and medications).) Though the ALJ acknowledged the record evidence supporting Plaintiff's subjective complaints, he failed to explain how he discredited Plaintiff's subjective allegations; as a result, the Court is "left to guess" how the ALJ arrived at his conclusion and cannot meaningfully review his determinations. *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015). Because the ALJ's cursory explanation regarding Plaintiff's subjective statements fell short of his obligation to provide "a narrative discussion [of] how the evidence support[ed] [his] conclusion," the ALJ's analysis is incomplete and precludes meaningful review. *Monroe v. Colvin*, 826 F.3d 176, 190-91 (4th Cir. 2016) (quoting *Mascio*,780 F.3d at 636). Therefore, remand is warranted.

## V. CONCLUSION

The undersigned RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED to the extent it alleges error in the ALJ's evaluation of Plaintiff's subjective complaints; (2) Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED; and (3) the Commissioner's final decision to deny Plaintiff Social Security benefits be VACATED and REMANDED to the Commissioner for further administrative proceedings.

Let the clerk forward a copy of this Report and Recommendation to United States District

Judge David J. Novak and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: April 28, 2023